J. R. Swan, J.
I am constrained to dissent from the opinion off the court in this case.
*162, 163 It is insisted that a decree of reversal can not be reviewed, be•cause it is interlocutory, or not final.
The rule that an interlocutory order, which disposes of part only ■ of the questions made by the allegations and proofs, is not subject to review until final decree, is undoubtedly true. A decree, however, which passes upon and determines all questions made by the bill, answer, and exhibits, is a final decree, and may bo reviewed. To determine, therefore, whether a decree of reversal is a final 162] ^decree, depends upon the fact whether the decree of reversal ■ determined all the questions made by the bill of review. In the •case before us, the bill of review filed by Anderson and Sturges, in the court of common pleas of Hamilton county, stated, by reference, the original bill and the proceedings thereon, the decree, and the points in which the petitioners conceived themselves aggrieved by it, and the errors upon which they sought to have it reversed. The questions made by the bill of review were, whether there were errors in the decree of the common pleas. This was the whole scope of the bill, and the only questions which the court could decide. The .action of the court upon the bill of review ended when they pronounced the decree of reversal. Under the bill of review, the court could take no action whatever in the original cause; for, if the court of common pleas, or the district court, proceeded after the reversal ■of the decree of the court of common pleas, they did so in the original suit, and not on the bill of review. And if this court, after the reversal of the decree of the court of common pleas, had made any orders or decree affecting the rights of the parties under the original bill filed in the court of common pleas, those orders and that decree must have been made in the original cause, and not on the bill of review; for the latter had done its work and determined the questions — -and the only questions made under it. But in answer to this it is said that, although the questions made by the allegations in the bill of review were determined and finally passed upon by the reversal of the decree, yet, inasmuch as further proceedings may be had under the original bill pending in the court of common pleas, the decree of reversal in the Supreme Court becomes a kind of interlocutory order in that case. I deem it a sufficient answer to this to say, that the decree of reversal was not made upon the 168] original bill filed below, *nor will the decree hereafter made below be made upon the bill of review.
It is only by mixing the two cases together, and treating them as *164 one,-and by calling the orders and decree hereafter made in the-original suit, as made also upon the bill of review, that this course-of reasoning can be maintained.
Independent of any judicial authority, it seems to me that a decree reversing a former decree comes within the settled definition of a final decree.
There is no authority to the contrary.
In England, upon bill of review, the defendant pleads the decree, and demurs against opening 'its enrollment. If the demurrer is-allowed, it has all the effect of confirming the decree, and terminates the suit. And so, if the demurrer is overruled, its effect is to reverse the decree. 3 Dan. Pr. 1732. On arguing the demurrer, the-original petition and exhibits can not be read; but after the demurrer is overruled, the plaintiffs are allowed to read the bill, or answer, or any other evidence, as at a rehearing; the cause then being open for a rehearing. Catterall v. Purchase, 3 Swanston, 290. Upon the reversal, therefore, of a decree in England, the original cause proceeds, as in this country, to a further hearing, and to further orders, and final decree; so that it is manifest that-the decree of reversal by the same court which proceeds with a rehearing and a final decree, is as much interlocutory in its nature as a decree of the Supreme Court of Ohio reversing a decree of the-court of common pleas is interlocutory to a final decree by the-court of common pleas after such reversal.
The law upon the question before us is thus stated in the English books of chancery pleading and practice: “ If upon bill of review a decree has been reversed, another bill of review may bo brought upon the decree of reversal. If the bill is brought to review the reversal of a former decree, it may *pray that the [164 original decree may stand.” Mit. Pl. 88; Daniels Pr. 1725, 1729; Adams Eq. (Perk, ed.) 881, 883; Cooper’s Eq. Pl. 93; Cooper cites Ch. Pr. 633; Redesd. Tr. Ch. Pl. 79. The same rule is stated in Story’s Eq. Pl., section 418, thus: “A bill of review may be brought after one bill of review already filed; as if upon bill of review a decree has been reversed, another bill of review may be brought upon the decree of reversal.”
The first case cited by elementary writers is Neal v. Robinson, which was decided in 1683, and is simply referred to in Dickens’ Reports by giving the volume of the chancery register and folio-where the ease is to be found.
*165 It'is said that these elementary writers are not sustained by .Dickens’ Reports, inasmuch as he has not reported the case. We have not access to the register containing the case of Neal v. Robinson. The English elementary writers, however, had an opportunity to consult the record of • the case referred to. But the eleme.ntary writers are themselves authority upon the subject; especially such writers as Lord Redesdale, and Justice Story, and .authority, too, of the highest character upon this particular ques"tion; for it is hardly possible that a principle like this should have remained for more than one hundred years in the text-books of every writer, English and American; should never have been overruled by any court in England or the United States during all that time; should never have even been questioned by any counsel in any case, and yet not be in accordance with the usages and practice of courts of chancery. I feel constrained to believe that the reason why elementary writers have always stated the law uniformly upon this subject, and why the learned and industrious counsel in this important cause and the members of this court have been unable to find a single case as a precedent for their decision, is because the-principle was never before questioned.
*The reversal of a mere money judgment at law, is generally much less serious in its consequences to parties, than the reversal ■of a decree, which.deals with and settles complicated rights aüd interests growing out of trusts, partnerships, and equitable estates in land. If an error is committed in the reversal of a money judgment, a party may be restored to his rights by another judgment. But interests intervene and changes take place under decrees which may render it vital to the rights of parties that a decree erroneously reversed should be reinstated. Hence upon setting aside a decree of reversal, a court of chancery may decree that the original decree •shall stand; a remedy which courts of law can not in general afford, .■and which inasmuch as they give remedies only in money seems unnecessary. Hence to reason- from any analogy between writs of •error and bills of review to sot aside a decree of reversal does not •satisfy my mind that a bill of review to reverse a decree will not lie in chancery.
But if there be any analogy between writs of error and bills of review, it is conclusive against the principle announced by the •majority of this court, in the present case; for nothing is more ••common £han to review, by writ of error in this court, a judgment *166, 167 of the district court which has reversed a judgment of the court of common pleas. Thus, in the case of Chapman v. Weimer et al., 4 Ohio St. 483, the judgment of the court of common pleas had been reversed, and a new trial in the common pleas ordered by the district court; and then a petition in error was filed in the Supreme Court to reverse the judgment of reversal of the district court; and the judgment of the district court was reversed, and the judgment of the common pleas affirmed, notwithstanding the new trial pending in the common pleas under the order of reversal of the district 166] court; presenting the same apparent embarrassment *which the majority of this court now feel in the case before us; and the judgment" of reversal of the district court being quite as interlocutory in its nature and effect as a decree of reversal. So, in the case of Follett v. Buyer, 4 Ohio St. 586, the court of common pleas had given judgment for a set-off, and the district court being of the opinion the set-off should not be allowed, on error reversed the judgment. This last judgment was then reviewed, on error, in this court, and reversed5 and the original judgment affirmed. See also Lewis v. Eutsler et al., 4 Ohio St. 354; Huntington & McIntyre v. Finch & Co., 3 Ohio St. 445.
The case of Strader v. Byrd, 7 Ohio, 184, is cited as having something to do with the question before us.
In England, after two concurring decrees, a bill of review will not be entertained.
The case of Strader v. Byrd is an "affirmation of this English doctrine, and is sanctioned by the same rules and the same authorities, which permit a bill of review in the case now before us. I do not, therefore, perceive the. application of the case of Strader v. Byrd; nor do I perceive how the statutory remedy, by certiorari, has any analogy to the present question.
It is said that great confusion would arise from the prosecution of the present bill, while the court below are proceeding in the original ■cause. The same objection would be equally satisfactory against the prosecution of a writ of error, upon a judgment.of the district court reversing a judgment of the common pleas, and remanding the cause for a new trial, Or prosecuting a writ of error upon a judgment, while ■the judgment creditor was proceeding by bills in chancery and attachment against the debtors of the judgment debtor, and suing to judgment and execution the special bail. But what is the law in all 167] *sueh cases? If the judgment is reversed, every superstruc *168 ture reared upon it falls. So here, if the decree of the common pleas is made to stand, and the decree of reversal held for naught, the proceedings after the reversal end.
If a hill of review to reverse the decree of reversal, and to reinstate the original decree of the common pleas, is prosecuted after a final decree shall hereafter be pronounced below, will that relieve the case of any confusion or embarrassment ? Titles to real estate have been canceled by the reversal of the decree ; and if the court of common pleas now proceed to final decree on the original action, and titles are acquired thereunder, will a bill of review to-reverse that decree, or the decree of reversal of this court, and reinstate the old reversed decree, make these proceedings less vexatious, or rights of property more secure ?
But it is said by counsel that we can not review our own decree-of reversal, because the papers in that case have passed from the' control of this court.
A bill of review, by the English practice, sets forth the original bill, answer, exhibits, testimony, orders, and decree. The practice in this state is to make the original papers a part of the bill of review. This practice, adopted for the purpose only of saving costs-to suitors, can not change the remedies of the parties or the jurisdiction of this court. Upon the reversal of a decree upon a bill, of review, the record here should contain all that the English practice requires; or, if no record be made, the papers are as much under the control of this court as when the original bill of review was filed.
This case was before this court at their December term, 1855. A motion was then made to dismiss the bill, on the ground that the-court had no jurisdiction to entertain it. When that motion was-argued counsel insisted, as they do now, that a decree of reversal 168] is not in its nature final. No *new arguments have been urged at the present hearing. The court then considered the question, and were of the opinion, and for the reasons which I have now stated, that a decree of reversal could be reviewed, and was not in its nature interlocutory, but final. But the question was deemed of so little importance that the judge, to whom was assigned the-delivery of the opinion of the court upon that motion (4 Ohio St. 690), has not noticed it. What was deemed then an incidental question, and decided against the defendants in error, nowi’ules the: case the other way, and is armed with judicial authority.